The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award.
* * * * * * * * * * * * * *
This matter involves an admittedly compensable claim for bilateral carpal tunnel syndrome that was the subject of prior Industrial Commission Awards compensating plaintiff for her resulting total and permanent disabilities. Prior to the hearing before Deputy Commissioner Shuping, the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set out herein and where the parties agreed to a number of jurisdictional and other factual stipulations, including as part thereof a package of medical records. The prior Industrial Commission Awards in this matter are hereby incorporated by reference as if fully set out herein.
* * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and enters the following:
FINDINGS OF FACT
1. Plaintiff is an unemployed, forty-three (43) year-old female who is currently receiving Social Security disability benefits, has not looked for work since being terminated from defendant's employ in April of 1994 and is not motivated to look for work, but nonetheless still retains the capacity to perform the type of modified part-time light duty work defendant-employer had been providing since her return to work on 8 October 1993. Plaintiff quit school in the eleventh grade, but has since obtained both welding and sewing certificates as a result of separate eight week courses taken at Roanoke-Chowan Community College and is only a quarter short of her cosmetology degree. Plaintiff's prior work experience has included driving a taxi, working as a waitress, bartender and cashier at the VIP Club and as a hotel maid.
2. In August of 1985 plaintiff became employed by defendant Perdue, Inc. as a breast/wing grader responsible for taking breasts and wings from bins in front of her and placing the good ones in trays on a moving conveyor that similarly ran in front of her and the bad ones, either in tanks behind her or a box in front of her dependent upon whether breasts or wings were involved.
3. Due to the repetitive hand movement required by her regular breast/wing grader's job on or about 1 April 1992 plaintiff developed the admittedly compensable occupational disease disabling bilateral carpal tunnel syndrome that was subject of the Industrial Commission's prior awards of total and partial disability benefits manifested by bilateral hand and wrist pain and numbness and resulting in her initially becoming disabled by the same disease on or about 24 August 1992 when she underwent a right carpal tunnel release and thus the date of injury for the purpose of determining the beginning of the 300 week period under the provisions of G.S. § 97-30.
4. After initially being treated by Dr. Clayton plaintiff was referred to an orthopedic surgeon, Dr. Joseph Bloem of Rocky Mount, who also attempted a conservative course of treatment consisting of medication, physical therapy, injections and allowing her to perform the modified light work that no longer involved the type of repetitive hand movements required by her regular breast/wing grader's job, including the styling job described of record and other low risk ones similarly not requiring repetitive hand movement.
5. On 24 August 1992 when plaintiff's condition did not improve with conservative treatment Dr. Bloem performed a right carpal tunnel release and she concurrently began receiving benefits under the Industrial Commission's original award during her resulting period of total disability.
6. Although having then neither reached maximum medical improvement and/or the end of the healing period from and following her bilateral carpal tunnel syndrome and corrective surgery necessitated thereby nor able to return to her regular breast/wing grader's job or other work similarly involving repetitive hand motion; by 8 October 1992 she had sufficiently recovered from the same condition so as to be able to return to lower paying modified part-time light duty work involving working four hours a day in a low risk job in the premises mezzanine area. There plaintiff was merely responsible for guiding moving boxes of product on a conveyor, which neither required repetitive hand motion nor significant lifting and she concurrently began receiving benefits at a rate of $81.31 under the Industrial Commission's last award for her resulting partial disability, was then bound by the same award that she was only partially incapacitated by her bilateral carpal tunnel syndrome and remains capable of performing the same job or similar non-repetitive work.
7. Although Dr. Bloem originally recommended bilateral carpal tunnel releases, when plaintiff's condition did not improve after undergoing the right carpal tunnel release, plaintiff elected not to undergo one on her left hand and is not a candidate for further surgery in view of her failure to improve with the original surgery, the non-related generalized complaints involving her neck, shoulder, back, legs and feet and that she continues to complain and her emotional reaction to the whole situation.
8. Since her return to modified light duty work in October of 1992 plaintiff has reached maximum medical improvement and/or the end of the healing period from and following her bilateral carpal tunnel syndrome and as a result thereof retains eight percent permanent-partial disabilities of each hand.
9. Although because of her permanent hand injuries plaintiff is unable to return to her regular breast/wing grader's job or similar repetitive work, she has remained capable of performing the type of modified part-time light duty work she returned to on 8 October 1992 and could have continued to perform to date had she not been terminated from defendant's employ in April of 1993 for reasons unrelated to her occupational disease, which are more fully hereinafter described.
10. After returning to modified part-time light duty work on 8 October 1992 plaintiff developed generalized pains in her neck, shoulders, back and legs as well as numbness in her feet and in November of 1992 sought treatment for the same symptoms, which were not work-related, from her family physician, Dr. Flood, who not only began treating plaintiff for her resulting cervical and lumbar strains, but as part thereof referred her to a number of specialists for evaluation. Initially Dr. Flood referred plaintiff to Dr. Ann Reading, a neurologist associated with the Southeastern Neurology Group, for an evaluation of her leg pain, who subsequently obtained an MRI indicating a disc bulge at the C5-C6 level of her cervical spine. As a result Drs. Flood and Reading referred plaintiff to Dr. Ira Harding for neurosurgical evaluation; however, the bulging C5-C6 disc shown on MRI did not involve a clinically significant lesion requiring treatment much less surgery; but rather, represented minor degenerative disc disease at the same level that was not compressing the nerve roots or spinal cord; while the rest of her complaints of neck, back and leg pain were due to the previously described non-work-related cervical and lumbar stains originally diagnosed by Dr. Flood.
11. In the interim on 28 January 1993 plaintiff returned to one of Dr. Reading's partners, Dr. Robert Hansen, who had done the original nerve conduction studies prior to her right carpal tunnel release surgery, for evaluation of her multiple complaints and he diagnosed a possible myofascial pain syndrome, carpal tunnel syndrome and plantar fasciitis and not only recommended she wear wrist splints at night and while she worked, but consider modifying her work shoes either by using an insert or trying a different kind of safety shoe. Thereafter, however, Dr. Flood referred plaintiff to Dr. William E. Byrd, a rheumatologist, to determine whether she was in fact suffering from myofascial pain syndrome, which she is not. None of the physicians that have either evaluated and/or treated plaintiff during this period of time ever took her out of work because of her carpal tunnel syndrome; but rather, allowed her to continue regularly working despite her bilateral carpal tunnel syndrome, which she was then capable of doing and still remains so.
12. As indicated by the parties stipulation in the Pretrial Agreement, plaintiff was out of work from 5 February 1993 to 22 February 1993 as a result of a non-work-related respiratory infection, but again returned to work on 22 February 1993 and continued working until 18 March 1993 when she took another medical leave of absence because of the non-work-related generalized pain for which Dr. Flood had been treating her since November of 1992 and such medical leaves of absences were only allowed by defendant-employer for similar non-work-related conditions. The initial leave of absence was also only authorized from 18 March 1993 to 1 April 1993 and in order for plaintiff to extend her medical leave of absence beyond 1 April 1993 she was required to provide a current note from her physician excusing her from work. Despite repeated requests, however, plaintiff never provided defendant-employer with a current note from her physician taking her out of work and when she had not by 26 April 1993 she was terminated from defendant's employ and in fact during this period of time Dr. Flood had not taken her out of work, but assumed she was still working. Plaintiff's testimony, which if believed, would tend to establish either that she was totally incapacitated from working or took a note from Dr. Flood excusing her from prior to her termination is not accepted as credible and is contrary to Dr. Flood's own testimony that he assumed she was still working during this period.
13. As previously stated, plaintiff has not looked for work since her termination from defendant's employ nor has she attempted to return to work for defendant-employer performing the type of modified part-time light duty work she had been provided from 8 October 1993 until her termination in April of the following year and still remains capable of had she not been terminated for reasons unrelated to the involved occupational disease.
Plaintiff's refusal to return to work for defendant-employer on 1 April 1992 after her medical leave of absence had been exhausted was tantamount to a refusal to accept the type of suitable modified light duty work defendant-employer had been providing her since 8 October 1992 and she still remained capable of performing.
14. Defendant-employer is entitled to a credit against the instant award of partial disability benefits under the provisions of G.S. § 97-30 for the $785.20 in benefits it provided plaintiff under a non-contributory disability plan during the period from 18 March 1993 to 26 April 1993, which were not due and payable under the Workers' Compensation Act because of the same employer's denial of liability for compensation benefits during this period.
Based upon the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Although plaintiff cannot return to her regular breast/wing grader's job or similar work requiring repetitive hand use, she is no longer totally disabled by the involved occupational disease giving rise hereto; but rather, since 8 October 1993 has only been partially disabled thereby because she has remained capable of performing the type of lesser paying modified part-time light duty work defendant-employer began providing her then and could have continued the same job had she not elected to take a medical leave of absence on 18 March 1993 for the non-work-related generalized complaints of pain described in the above Findings of Fact and her subsequent termination from defendant's employ was because of her failure to provide medical documentation of continuing disability from these non-work-related complaints beyond 1 April 1993 as opposed due to her concurrent bilateral carpal tunnel syndrome, which only remained partially disabling resulting in her remaining able to perform the same type of modified part-time light duty work at the time she refused to return to work on 1 April 1993 when her medical leave of absence has exhausted and her failure to do so was tantamount to refusal to accept suitable employment.
2. The more munificent remedy is to compensate plaintiff for her partial disability under the provisions of G.S. § 97-30
rather than for her resulting eight percent permanent-partial disabilities of the hands. Since 8 October 1992 plaintiff has been partially disabled as a result of her bilateral carpal tunnel syndrome entitling her to compensation at a rate of $81.34 per week from 8 October 1992 and continuing for a maximum of 300 weeks from the date of her injury, 24 August 1992 when she initially became disabled by the involved occupational disease, subject to a change of condition, medical or employment, as well as credits for the total and partial disability benefits paid under the Industrial Commission's prior awards and the $785.20 in benefits defendant-employer paid under its non-contributory disability plan that were not due and payable under the Workers' Compensation Act.
* * * * * * * * * * * * * * *
On oral argument, Defendant asked the Full Commission to take judicial notice of a Form 28 which Defendant had filed with the Commission, allegedly showing that the Plaintiff had returned to work full time. Defendant later submitted West v. Highland Industries, I.C. No. 327652, filed 1 August 1995, as additional authority justifying admission of the Form 28. The submitted case is distinguishable. There, the Form 22 cut against the position of the party that submitted the Form 22 and was admissable as a declaration against interest. Here, the Form 28 cuts in favor of the party submitting it and is hearsay. Further, plaintiff has not had an opportunity to examine under oath the person who filed the Form 28. Defendant's Motion for judicial notice of the Form 28 is, therefore, denied.
* * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her continuing partial disability, compensation at a rate of $81.34 per week during the period from 8 October 1992 to the scheduled hearing date and thereafter continuing at the same rate for a maximum of 300 weeks from the 24 August 1992 date of her injury when she initially became disabled by the involved occupational disease, subject to credits for the total and partial disability benefits paid under the Industrial Commission's prior awards as well as the $785.20 in benefits under the non-contributory disability plan provided by defendant-employer during the period from 18 March 1993 to 26 April 1993. Such compensation as has accrued thereunder shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the accrued net (after credits for the benefits previously paid under the Commission's prior awards as well as for the $785.20 paid under the non-contributory disability plan provided by defendant-employer) compensation due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the same and forwarded directly thereto. For the balance of his fee defendant shall forward every fourth compensation check payable thereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto when bills for the same are submitted on proper forms, through the above-named servicing agent, to the Industrial Commission for approval and are approved by the Commission.
4. Defendant shall bear the cost, including as part thereof expert witness fees in the amount of $200.00 to Dr. William E. Byrd, $150.00 to Dr. Roy D. Flood and $350.00 to Dr. Joseph T. Bloem, each of whom appeared by way of deposition and gave expert medical testimony, as well as $150.00 to Stephen Carpenter, plaintiff's vocational expert, who similarly appeared by deposition and gave expert vocational testimony.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________________ LAURA KRANIFELD MAVRETIC DEPUTY COMMISSIONER
S/ ________________________ BERNARD D. ALSTON DEPUTY COMMISSIONER